If it please the court, Les Weatherhead for Liddell Harrison, defendant below and appellant here. We ask that this court reverse Mr. Harrison's conviction for four reasons. One, that the trial court should have suppressed physical evidence in the form of a weapon recovered from an apartment occupied by Mr. Harrison's friend and should have suppressed statements that Mr. Harrison made that were inculpatory. Second, that the trial court should not have meted out a sentence that was mandatory under the Armed Career Criminal Act. Third, that Mr. Harrison should have been permitted to remind the jury during the course of the trial that there was to be imposed upon him if convicted a mandatory penalty about which the trial court had no discretion. And finally, that the trial court should have instructed the jury that the gun must be in or affect commerce at the time of the offense and not at any time prior to the offense. As to the latter point, Your Honor, on rereading our briefs over the weekend, I was very embarrassed to find that we had not discharged our obligation to the court, which we did in the trial court but not in our briefs, to tell you that there is contrary authority both from this court and from the Supreme Court and that we had interposed that argument preservatively in hopes of raising a Lopez argument later. I apologize to the court for that oversight. Those cases are Scarborough v. United States, 431 U.S. 563, and United States v. Casterline, 103 Fed. 2nd. 77. Your Honor, as to the suppression question, the search and seizure in this case presented some sort of unique and intertwined arguments or issues under the Fourth and Fifth Amendments. Mr. Harrison was a probationer. He was in violation of his probation. He was seized lawfully in a tavern at Spokane, Washington, as in violation of his probation. At the time that he was seized, he was questioned without being furnished a Miranda warning. The trial court later determined that that set of questions violated his rights under Miranda and that his answers must be suppressed. Harrison was then physically taken to the residence. Just so that we're plain, I know the courts have read the brief, but the point of the questions were to establish where he lived. And where he lived was relevant because the probation officer said he had changed residences and hadn't reported his new residence, and the probation officer wanted to conduct a search at the new residence in order to look for a weapon that the probation officers had been told Harrison had. So he made incriminating statements about his residence being at the apartment. But as to the residence, Rebecca, the lady he was living with, told the police that that's where he was staying, right? That's correct. That was her testimony, Your Honor. So that if you disregard his statements, they still had probable cause to believe that that's where he was residing? Well, Your Honor, I think on a fair reading of the record, Officer Thompson testified a couple of times in the pretrial proceedings, and I think both times he said that Ms. Durham had said, and he stays with me sometimes, but that to make sure, to put the final clincher on the point, he had turned then to Mr. Harrison and asked him those questions. And at one point he offered an argument that, well, if Mr. Harrison had been Mirandized and refused to answer us, there were other things we might have done. He made a sort of an inevitable discovery kind of argument, but they never did those other things that they might have done. So it's our respectful position, Your Honor, that at least the officer didn't think that whatever information he'd obtained from Ms. Durham was sufficient to satisfy him at that time that he had grounds to search her apartment as the residence of Mr. Harrison. The next step in the proceedings was to take Mr. Harrison to the residence. He was seized, and it was unclear from the record whether the officers were seizing him strictly under their authority, as some of the officers were Department of Corrections officers who had the right to seize him. Other of the officers were sheriff's deputies and policemen who had a Snohomish County warrant that had been issued by a Snohomish County judge for his arrest. And it wasn't really clear to me anyway whether or not the seizure was justified as a DOC seizure or as an execution of the county warrants. But in either event, I think everybody was in agreement that the standard obligation of the officers at the scene was to then return Mr. Harrison to the official custody of the state for purposes of presenting him to a magistrate. But that wasn't done. They took a detour. They took a detour to Ms. Durham's apartment. Why? Why the detour? Well, it turns out that under state regulations, in order to conduct a probationer search, the probationer has to be present. It seems to me clear that the regulation was written on the assumption that a corrections officer will be visiting a probationer at his residence and can ask at that time or insist at that time on conducting a warrantless search. However, because their regulation required Mr. Harrison to be present, he was seized and taken there. We respectfully submit to Your Honors that that was an unlawful seizure, that the obligation of the officers was to return him to custody for purposes of presenting him to a magistrate and for no other purpose. While at the residence, Mr. Harrison was questioned again before being given his Miranda warnings. Here again, the district court concluded that those statements had to be excluded. Nevertheless, the two statements excluded by the district court were found in a separate ruling by the district court to justify the search of the premises. It's our respectful conclusion that those two sets of conclusions ought to have been paralleled up and lined up together and that the district court ought to have concluded that the search was unlawful based upon the Miranda violations that the district court found. Once they found that the search was unlawful, didn't they have reasonable suspicion to conduct the search? Regardless of any statements he made, they had a tip from a reliable, confidential informant that he had a gun at the place he was staying. And because he was a probationer, even assuming we need reasonable suspicion, wasn't there reasonable suspicion for that search? Your Honor, the classic Fourth Amendment analysis requires there to be, in the Fourth Amendment context, probable cause to think that you will find contraband or evidence of a crime and to think that you will find it in a specific location. Now, I'm talking about a probationer's search. Yes, Your Honor. You don't need probable cause for a probationer's search. Maybe you need reasonable suspicion. I follow, Your Honor. And my point in sort of reverting to classic Fourth Amendment analysis was that I think in the probation context you need reasonable suspicion to think that you will find contraband or evidence of a crime and you need reasonable suspicion to think that the place that you're about to search is the residence of the probationer. And it was on that point that the officers were not sure and were seeking confirmation. And I would say, Your Honor, that if they weren't sure... But I thought we were now on the question of whether you could... You're back to whether that was the location? Yes, Your Honor, because part of the... But you're now arguing that if it was the location, that they didn't have reasonable suspicion to search. Yes, Your Honor. In other words, the second set of questions that were put to him in the location were there again to confirm, you know, are those your clothes in the closet, seeking to legitimize a probation search. Then, Your Honor, just to speed this up a little bit, Mr. Harrison was asked, is this your gun? He declined to answer. And he overheard officers in the hallway telling Ms. Dunham, or Durham, who was then nearly at full-term pregnancy, if you don't, you know, if this isn't his gun, if you don't tell us this is his gun, you're going downtown. Now, the trial court found that Mr. Harrison's testimony was he heard this and he changed his mind and he said, okay, okay, it's my gun. And he's not a model of articulation at that point in the transcript. But I submit to the court that it was clear error for the district court to say that there was no nexus between that statement by the officers to Ms. Durham and Mr. Harrison's decision to change his mind. I think, though not in the most articulate terms, he is very plain in his testimony that his reason for changing his mind was to take the heat off Ms. Durham, who he said should be going to a doctor, not downtown. But they didn't threaten him. If you take his story and you accept it as true, he overheard them saying something to her. And nobody said threatened him, nobody made him a promise, nobody coerced him. He overheard something and because he's such a nice fellow, he voluntarily decided to tell them it was his gun because he thought it would help his friend. Well, I guess voluntariness is the issue, Your Honor, and it seems to me the relevant question is the state of mind of Mr. Harrison. Mr. Harrison, I believe, although not clearly, plainly enough articulated at the hearing that he would not have taken responsibility for the gun but for his desire to take the pressure off Ms. Durham. Do you want to save your voice? I think I'd better, Your Honor. Thank you very much. Good afternoon, Your Honors. May it please the Court. I'm Russ Smoot from the Eastern District of Washington here on behalf of Ms. Byerly, who was trial counsel as well as appellate counsel up until argument. Your Honor, the Court has asked many questions concerning the issue presented just now by the defendant and the Court and the government really hesitates rather than to reiterate what the Court has said. I think this case really involves just a couple of issues before the Court, one being the Court's, I guess, granting in part, denying in part of the suppression issues and also the Armed Career Criminal Act application. I guess I would, before making a statement on either of those, I'd just put it out to the Court whether or not there's any specific questions that the Court would like the government to address. I guess not. Well, Your Honor, I guess under those circumstances, the government would certainly request the Court to affirm the conviction as well as uphold the application of the Armed Career Criminal Act. I think that the Court, the District Court, correctly found concerning the statements that this case was much more, the facts of the case was much more like McShane than like Pringle and correct. Tingle, right? Tingle, excuse me, Tingle. I apologize, Your Honor. And also that the Court correctly found that the Armed Career Criminal Act did apply in this case based on the fact that the defendant did have two prior drug trafficking convictions as well as one conviction for a second degree assault. What's significant about that second degree assault is that in the statement upon the plea, the defendant specifically stated that he did, in fact, assault the woman victim by using a weapon, specifically a firearm in the case, and I think that under Shepard as well as the case. Well, the plea I thought was to subsection C, which is assault with a deadly weapon. I believe that's correct, Your Honor, and I think that all of the documents that Taylor and Shepard allow the Court to review on that issue support that conclusion that it was, in fact, a crime of violence. Thank you, counsel. Thank you, Your Honors. In my 21 seconds, Your Honor, I would like to point out to the Court that the plain terms of the statute require a total of four prior convictions for an armed career criminal designation. There has to be one which is an element of the offense, and then 924 says that you have to, after having established the elements of the offense, once you are guilty of the offense, including that element, you have to and, the Court says, or the statute says, have three previous convictions. In this case, there were at most a total of three, the one used to establish the offense and two. Thank you, Your Honors. Thank you, counsel. Thank you both. The case is submitted.
judges: Reinhardt, McKeown, Clifton